1 | Ekwan E. Rhow - State Bar No. 174604
        erhow@birdmarella.com
2 | Oliver Rocos - State Bar No. 319059
        orocos@birdmarella.com
3 | BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   | DROOKS, LINCENBERG & RHOW, P.C.
4 | 1875 Century Park East, 23rd Floor
   | Los Angeles, California 90067-2561
5 | Telephone: (310) 201-2100
   | Facsimile: (310) 201-2110
6 |
   | Attorneys for Plaintiff Krystal Ventures,
7 | LLC

8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL VENTURES, LLC, | CASE NO. 2:20-cv-09315 |
|        Plaintiff, | Assigned to |
|     vs. | **COMPLAINT FOR BREACH OF CONTRACT, FRAUD, UNJUST ENRICHMENT** |
| GENTRY BEACH, | |
|       Defendant. | |

COMPLAINT

## INTRODUCTION

1.     This claim arises out of Gentry Beach's ("Beach") fraudulent misrepresentation that he would repay Plaintiff Krystal Ventures, LLC ("Krystal Ventures") the money it loaned him for his purchase of Personal Protective Equipment ("PPE") from Korea within 48 hours of that loan being made.  Rather than timely repaying Krystal Ventures, Beach has refused to repay the sum he owes until after he has made a profit from selling the PPE.  In hindsight, Beach's fraudulent scheme appears to have been part of a concerted effort to engage in naked COVID-19 profiteering—buying up stock of valuable PPE that was desperately needed in the United States as it suffered from the ravages of the pandemic raging across the country and using that desperation to turn a profit.

2.     The facts that Beach committed the fraud against Krystal Ventures, refused to use his own money to finance the purchase of the PPE, and that commercial invoices for the PPE were forged with Krystal Ventures' signature indicate that Beach intended to hide his role in the purchase and sale of the PPE. These facts, combined with Beach's repeated touting of his close relationship with President Trump and his strong support for President Trump's re-election bid, in both national media and in the parties' negotiations, suggests that Beach's profits from the sale of the PPE may be directed towards that re-election effort or other nefarious ends.  Regardless of Beach's use of the proceeds, Beach's representation that the loan would be repaid within 48 hours was fraudulent and Krystal Ventures is entitled to damages.

## JURISDICTION AND VENUE

3.     Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship because Krystal Ventures is incorporated in California and has its principal place of business in California, and Defendant is a resident of Texas.  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4.     Personal jurisdiction exists over Defendant in this district because he intentionally directed his activities into this jurisdiction by entering into the commercial agreement with Krystal Ventures that is the subject of this action.

5.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim asserted in this action occurred in this district.  28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

6.     In May 2020, Beach directed his agent Rick Kofoed ("Kofoed") to contact the principal of Krystal Ventures, Dan Kang ("Kang"), with a business proposal.  Under that proposal, which Kofoed stated to Kang orally, Krystal Ventures would advance $1,000,000 (the "Loan") on Beach's behalf to a company called SOG Trading, Ltd., a Hong Kong based trader.  That sum would pay for the purchase of hundreds of thousands of items of PPE, specifically face masks.  Beach would take delivery of the PPE and repay the Loan within 48 hours of Krystal Ventures paying SOG Trading, Ltd.

7.     As evidence of Beach's good faith, reputation as a businessman, and ability to sell the PPE, Beach and Kofoed repeatedly touted Beach's close personal relationships with President Trump, Donald Trump Jr. (who he said was his college roommate), and others within the Trump family and Republican Party.  They also repeatedly referenced Beach's role as a fundraiser and financial supporter of President Trump's 2016 and 2020 election bids as evidence of his connections and reputation.

8.     Kang, on behalf of Krystal Ventures, orally agreed to the proposal.

9.     On May 6, 2020, Beach sent Kofoed the invoice from SOG Trading that Krystal Ventures was to pay.  Exhibit A.  Kofoed sent that invoice along to Kang.  *Id.*  In accordance with the parties' agreement, that same day Krystal Ventures paid SOG Trading Ltd. $1,000,000 for the PPE.  Exhibit B.

10.     Contrary to the parties' agreement, Beach did not repay the Loan

within 2 days.

11.     After Beach defaulted, Kang repeatedly demanded of Beach that the Loan be repaid.  On May 14, 2020, for example, Kang demanded via text message the immediate repayment of the Loan.  Beach did not repay the Loan, but did not dispute that he was obligated to do so and that his payment was late.  Instead, he stated that he was close to selling the PPE and that he would be able to repay Krystal Ventures when he had done so.

12.     Kang continued to chase Beach for the repayment of the Loan, including in telephone calls on May 15 and May 23.  On each occasion, Beach did not dispute that he was obligated to repay the Loan and had not done so in accordance with the parties' agreement, but said he was unable to repay it until after he had sold the PPE.

13.     The parties never agreed that the Loan would not be repayable until after Beach had sold the PPE.  Further, Beach had never disclosed that he would be unable to repay the Loan until after he had sold the PPE.  Had either of those situations occurred, Krystal Ventures would not have agreed to extend the Loan to Beach.  Krystal Ventures did not want to risk its money on the chance that Beach would be successful in his gamble at reselling the PPE in the United States, and it was not compensated for that risk.

14.     Following sustained pressure from Kang, on June 1, 2020 Beach repaid Krystal Ventures $200,000 of the $1,000,000 Loan from a bank account he shares with his wife, Kathryn Munson.  Exhibit C.  Beach continued to state, however, that he could not and would not repay the remaining $800,000 until after he had sold the PPE.  In an apparent gambit to delay Krystal Ventures, Beach began repeatedly claiming that his sale of the PPE was imminent and that the remainder of the Loan would shortly be repaid.  For example:

- On or around June 11, 2020, Beach messaged Kang stating "Looks like I have sold the 1mm [items of PPE] today.  Docs in process."  When

Kang asked if that meant payment would be forthcoming, Beach replied on June 15, 2020 "I'm expecting payment by late today and will send to you the moment it comes to me."

- When payment did not arrive, Kang again asked for an update. On June 19, 2020, Beach again stated "I'm expecting the wire to hit my acct anytime and will turn around to you same day."

- When payment still had not come by June 22, 2020, Kang followed up again. Again, Beach stated "I'm expecting wire to hit my acct any time now. As soon as it does it is coming to you."

That payment never arrived.

15. Kang continued to chase Beach. In September 2020, Beach confirmed on several telephone calls with Kang that the Loan was his and that it was past due. Beach again claimed he lacked the funds to repay his debt and demanded more time to pay, but made several partial payments amounting to $37,500, again from his personal bank account he shares with his wife. He has not identified when, or even if, he will able to repay the balance. As of the date of filing, $762,500 of the $1,000,000 Loan to Beach remains outstanding.

16. Further, when the PPE arrived in the United States, Kang was sent a series of commercial invoices relating to that PPE and to other PPE Beach had acquired samples of. Those commercial invoices all identified Krystal Ventures as the importer and contained a signature purportedly on Krystal Ventures' behalf. Since Krystal Ventures was not the importer—Beach was—and since Kang is the only individual with authority to sign on behalf of Krystal Ventures and the signature was not his, those signatures were fraudulent. Since the PPE was imported for Beach, it appears that Beach was responsible for that fraud and it was committed in order to support his fraudulent actions with respect to the Loan and to hide his involvement in the purchase, import, and sale of the PPE.

## **FIRST CLAIM FOR BREACH OF CONTRACT**

17.   Krystal Ventures repeats and re-alleges paragraphs 1 through 16 of this Complaint.

18.   In accordance with the parties' agreement, on May 6, 2020 Krystal Ventures paid SOG Trading Ltd. $1,000,000.  It informed Beach of that payment the same day.

19.   Under the parties' agreement, Beach was obligated to repay Krystal Ventures the $1,000,000 Loan within two days of that sum being paid to SOG Trading, Ltd.

20.   In breach of his obligations, Beach failed to repay the Loan within two days.  He still owes $762,500 of the original Loan value.

21.   Krystal Ventures has suffered and will continue to suffer harm as a result of this breach.  Krystal Ventures seeks damages in an amount to be determined at trial, including the repayment of the principal, as well as interest and costs.

## **SECOND CLAIM FOR FRAUDULENT MISREPRESENTATION**

22.   Krystal Ventures repeats and re-alleges paragraphs 1 through 21 of this Complaint.

23.   Beach willfully and intentionally engaged in fraudulent misrepresentation by representing to Krystal Ventures that he would repay the Loan within two days while in fact intending not to repay the Loan, either at all or not before he had sold the PPE.

24.   As Beach intended, Krystal Ventures relied on that fraudulent misrepresentation to advance on Beach's behalf $1,000,000 to SOG Trading Ltd.

25.   As a result of this fraudulent misrepresentation, Krystal Ventures has suffered and will continue to suffer harm.  Krystal Ventures seeks damages in an amount to be determined at trial, inclusive of statutory interest and costs.

26.   Beach committed the acts alleged herein maliciously, fraudulently,

oppressively, and with the wrongful intention of harming Krystal Ventures in a conscious disregard of its rights.  Krystal Ventures is thus entitled to recover punitive damages from Beach in an amount according to proof.

<u>**THIRD CLAIM FOR UNJUST ENRICHMENT/RESTITUTION**</u>

27.     Krystal Ventures repeats and re-alleges paragraphs 1 through 26 of this Complaint.

28.     Through his actions in refusing to repay the Loan to Krystal Ventures until after he has re-sold the PPE, Beach has shifted from himself to Krystal Ventures the risk that he is unable to sell the PPE he purchased.  Put simply, rather than speculating with his own money, he has instead speculated with Krystal Ventures' money.

29.     Under principles of equity and justice, Beach should not be permitted to profit from his own breach of contract and/or fraud by retaining for himself any profits from his sale of the PPE.  All such profits would unjustly enrich Beach at Krystal Ventures' cost.

30.     Accordingly, Krystal Ventures seeks damages in the form of unjust enrichment/restitution in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Krystal Ventures requests judgment against Beach as follows:

A.     General and special damages according to proof;

B.     Exemplary and/or punitive damages according to proof;

C.     All equitable relief deemed just, including an accounting of all profits earned and/or received by Beach from the sale of the PPE;

D.     An award to Plaintiff of their fees, costs, and expenses incurred in this action; and

E.     Any and all other relief this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Krystal Ventures respectfully demands a jury trial of all issues triable to a jury in this action.

DATED:  October 9, 2020

Ekwan E. Rhow
Oliver Rocos
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____

Oliver Rocos
Attorneys for Krystal Ventures, LLC

COMPLAINT